Court of Appeals for the 4th Circuit are admonished to give their attention for the court is now sitting. God save the United States and this honorable court. We are ready to hear argument in number 19-1862, Ayala v. United States, counsel you may proceed. Thank you, your honor. Good morning. May it please the court. My name is Mark Stevens and I represent the plaintiff's appellant, Juan Blanco. I'd like to reserve five minutes for rebuttal. We're asking the court to hold that the government does not have the discretionary authority to detain and deport U.S. citizens under civil immigration laws. The district court wrongfully dismissed the complaint based on the discretionary function exception. This exception involves a threshold inquiry into whether this is the type of tort for which Congress has waived sovereign immunity. The district court erred by focusing on the investigation, which is not the conduct that we're challenging. The district court also erred in finding that factual determinations are discretionary, reasoning that immigration officers must evaluate the factual circumstances they encounter and use their judgment. Judging whether a fact is true is not the type of judgment that is protected by the discretionary function exception. It's the discretion to make policy judgments, not factual determinations. This exception applies if two conditions are both satisfied. First, was the challenged action the result of judgment or choice about the best course of action? This prong is not satisfied if a federal statute, regulation, or policy mandates the course of action for the government to follow. The second part of the test is whether the challenged action was based on considerations of public policy, meaning economic, social, or political policy. Turning to application of the first part of the test, the first part of the test is not satisfied here because the government has no authority to arrest or detain U.S. citizens. The amicus brief does a good job laying out all the statutes, policies, and constitutional provisions that mandate DHS not to detain U.S. citizens. That's it, page 9-10. I keep using the word mandate. I'm not sure that I see a mandatory directive here from a statute or regulation. When you look at 8 U.S.C. 1357, that talks about granting immigration officials the power to arrest when they, quote, have reason to believe that someone is violating immigration law, and the words reason to believe seem to me to state a degree of judgment involved and a degree of discretion involved. I don't understand what the mandatory directive is that would overcome that language in the statute. Yes, Your Honor, I think the best mandatory directive here, the clearest one, is 18 U.S. Code 4001, and it says no citizen shall be imprisoned or otherwise detained by the United States except pursuant to an act of Congress. Now, that statute that you're referring to, 1357A2, it says that DHS may detain an alien if they have reason to believe the alien is removable. So that does not extend any authority to detain U.S. citizens because it's specifically focused on aliens. And then there's also the fact that agencies don't have inherent power to enforce law. They have the powers that are given to them by statute, and if you look at all the statutes that give them power to detain people and start removal proceedings, all the statutes only mention aliens, so they don't mention U.S. citizens. And because of these mandatory directives, the discretionary function exception does not apply, and the analysis should end here. The analysis is simple and straightforward. We identify the challenged action, and then we identify whether that action is governed by mandatory laws that dictate a course of action for the government to follow. Counsel, this is Judge Harris. You started by saying that the district court erred in focusing on the investigation, and so as I understand your position, you agree with the district court that how the officers conduct an investigation, that that part itself has an element of judgment or discretion. Is that right? I do, Your Honor, and I think the thing is... I'm sorry. No, I just want to make sure I understand your argument. So that is discretionary, but then when the agents draw a conclusion from the investigation and apply the law to whatever facts they found in their investigation, that is no longer a matter of judgment. Is that right? Yes, it is, Your Honor. That's essentially our position. Sorry. No, I just want to get to my app. I just want to make sure I fully understand. Your position, and you say this in your brief very clearly, is that applying undisputed facts to law does not involve judgment or discretion, and that right there is where I would like you to sort of explain to me how that can be right, and I feel like this is maybe a particularly hard case to make to a bunch of appellate judges since this is sort of what we do for a living is apply facts to law, and it seems to me at least like that often involves some judgment. So why is that a judgment-free exercise? Yes, Your Honor. So it sounds like you're referring to the citizenship statute, former U.S. Code 1432a. That statute is not worded in discretionary terms. It says that someone becomes a citizen upon the fulfillment of certain conditions. So the only thing that is left for the officer to do is identify when those conditions are satisfied. But the conditions are things like legal custody or actual and uncontested custody, and applying those standards to a set of facts can be difficult. It can involve some judgment. Yes, it can definitely be difficult, and just because I'm saying that the discretionary function exception doesn't apply, that doesn't necessarily mean that the government is liable if they do a reasonably good job. You know, it may turn out that they're not liable in this case under these facts, but the statute is not worded in discretionary terms. Well, that's a question I have to follow up on what Judge Harris is saying. If we try to separate investigation from arrest and detention, that would be an oddly segmented view, the way any criminal process or immigration process would proceed, because the investigation and the arrest and the detention seem to me to be part of a single sequence. One follows from the other from the other. You can't have an arrest without an investigation, or can you have a detention without an investigation? And I think the Ninth Circuit recognized that these different phases were linked, and they separate them. Would we be creating a circuit conflict? Would we not? I don't believe so, Your Honor, because that's an unpublished case, and it's relatively short, about one page. Maybe the reason that it's unpublished is because the Ninth Circuit thought it was really easy. That's the kind of thing that we sometimes do. Unpublished opinions are things that may not merit publication because they appear to the panel to be very straightforward. Yes, Your Honor. So the investigation, the detention, and the removal are all linked for the purposes of But we're at a preliminary stage. We're looking at a threshold inquiry into whether the challenged actions are governed by any mandatory laws. And so we have to identify what the challenged action is and whether it's governed by mandatory laws. So the mandatory laws that govern discretion investigations, they're relatively loose. Some of the current memos obligate them to investigate claims to U.S. citizenship, but we're not relying on that. We're saying that the challenged action is detaining a U.S. citizen, and that is clearly not discretionary. And we're saying that they also Back to what Judge Harris said, that a lot of times applying facts to law and a lot of times deciding whether the investigation is whether arrest and detention are warranted, that follows from investigation, and it would be an act of judgment all in itself. In this instance, the whole situation was confusing in this sense that we were talking here about this wasn't a cut and dried matter. There was confusion, I suppose, because it was a question of derivative citizenship, not a question of birthright citizenship. And then adding to the murkiness of it all is the fact that there was an admission before the IJ in August of 2004 that he was not, he said he was not, a citizen. And you say, well, it doesn't matter. Derivative citizenship is still citizenship, and you can't take his August 2004 thing at face value. So even if he was negligent, that still under our case law, negligence doesn't bring somebody outside the scope of the discretionary function exception. And so you ask why that is, and it's because of the way the statute is worded, and that the exception to the waiver of sovereign immunity still applies, even if there is negligent conduct, because the statute says it applies even if that discretion is abused. And that seems to suggest, well, even if the discretion is abused, it still applies. Congress meant this to shield certain discretionary functions of the federal government, particularly one as sensitive as immigration law, from this kind of tort suit. And to me, when you couple the language reason to believe with even if that discretion is abused, it seems to me to present a pretty sound case for immunity. So, Your Honor, the sorts of points that they were looking at, that complicated question that's difficult to assess, and Mr. Blanco may have conceded something at some point, those are all important points at the merits or liability phase of this trial. And I recognize perfectly well that under the facts that we have, it may well be difficult for us to prove liability. But the issue is we weren't even allowed to get there. You say, oh, this should wait until the liability phase, and this should be further into it. But you do have cases like Mitchell v. Forsythe, which says if immunity is going to mean something, it has to be applied sooner rather than later. And because the immunity is not only an immunity from liability, but it's an immunity from going too deep into the litigative process. And that's what, at least there are a number of Supreme Court decisions that apply that. I think they may be less persuasive in an area other than litigation over immigration enforcement. But those decisions are there, and they talk about immunity as immunity from suit, not just as an immunity from ultimate liability. You can lose an immunity if you go through what we all know can be a laborious process attendant on litigation. Yes, Your Honor. The problem with trying to assess liability now is we haven't developed a factual record. And I think that... Go ahead, Finnish. I just want to make sure I have time. Yeah. I think the case which best explains this is Cobb v. United States. It's a Second Circuit decision cited in the amicus brief, C-A-B-A-N. And it basically recognizes that law enforcement officers, they do have a lot of powers, and they have a lot of protections that the merits face. But that doesn't make the discretionary function analysis and the mechanical duties of identifying whether someone meets the criteria for entry to this country, that doesn't change that into a discretionary determination. Counselor, I just want to ask you one last question, for me at least. You referred quickly to the... There have been some directives since the time of these events that have been issued. And I know we now have this so-called Morton Memo that kind of walks officers through the steps they need to take when there's a question as to citizenship and requires that they consult with counsel. And I think the facts of this case make clear why that is probably an excellent idea. But just in reading that directive, it struck me that that's sort of what's missing from this case. That looks like Berkowitz, like here's a particular set of steps you have to go through in making your determination. And it seems to me that that almost sort of highlighted what we don't have here. And I just wanted to give you a chance to respond to that concern of mine. Yes, Your Honor. I think you can look at this case. You know, there's different parts of the facts here. You know, did they investigate? Our position has always been that they investigated just fine. They got all the facts that they needed. Then there is the application of law to those facts. And as I've tried to explain, that's a mechanical function of just judging facts. And then there's really the core of our complaint is that they detained a U.S. citizen. And that is not discretionary. And I think a lot of the government's defenses, such as that Mr. Blanco may have conceded alienage at some point, I think that goes to the merits of the claim and not this threshold question, which is where we're supposed to identify the challenged action and ask whether that action is governed by mandatory laws. So I see my time is up. And so unless there's any other questions, I'll reserve the rest of my time. Judge Harris, do you have any further questions? No, thanks. Judge Richardson? No, thank you. All right. Let's hear from the Appellees Council here. Good morning, Your Honors. May it please the Court. My name is Elizabeth Spavins. I represent the Appellee of the United States. Other courts have looked at claims arising out of virtually the same factual circumstances. Your Honor mentioned the Artigo Ruiz case in the Ninth Circuit. And those courts have almost universally held, as the district court did here, that the court lacked jurisdiction to consider appellant's suit because of the discretionary function exception to the FTCA's labor of sovereign immunity. The discretionary function applies to the United States' decision to investigate Mr. Blanco's immigration status and to adjudicate his claim to derivative citizenship in 2004, which led to his detention and removal in 2004 and subsequent detention in 2015 and 2016. Counsel, this is Judge Harris. Can I ask you a question about sort of the breadth of your position on this first prong? What if there's an ICE agent who's arresting and detaining people born in the United States to immigrant parents who may or may not be documented? And his emails, when they show up, say that, look, I just determined these people are not citizens because I can't confirm that their parents are documented. And I think that birthright citizenship is made up, and that's not what the 14th Amendment means. So he detains them. They're deported. Is that an exercise of discretion that would be protected under the discretionary function? No, I don't think so, Your Honor. Many of the cases, again, Artigo is an example, specifically call out that if there's no allegation of intentional misconduct. There's nothing intentional. This is the officer's best understanding of the law. He made a legal mistake, but it's a good faith error. He did not understand that the 14th Amendment birthright citizenship clause would apply to these people. Absolutely. Your Honor, framed that way, there is the other distinction, the other area of law, which wasn't discussed in the previous part of the argument, which is that individuals of foreign birth, they carry the burden to demonstrate citizenship. So in your hypothetical, How does that change whether or not the officer here is exercising a discretionary function? You would say this is a discretionary function, and what flows from that maybe would be different. Or are you saying this one is not discretionary for some reason? What it sounds like is the facts, as you laid them out, Your Honor, are more in line with what courts have specifically noted, that if there's some example of intentional misconduct, intentionally disregarding a birth certificate, which is what I, if I misunderstood, I apologize. But these individuals were born here, but the officer was, as you said, disregarding birth certificates. He made a legal mistake. He made a really obvious legal mistake, which is what happened in this case. I mean, we know what went wrong here, right? The officer just misunderstood the law. And he thought because the custody was not set out in the divorce decree, that meant that this person was not eligible for citizenship. And that was just wrong as a matter of law. So I'm just giving you barely even a hypothetical in question. I've just made it a little nastier. Well, Your Honor, as far as an obvious mistake or not, the question of actual uncontested custody is a complicated factual question. Cases that the appellant cites in their brief, such as Kamara v. Lynch, demonstrate there are a lot of factual questions inherent. So it's not such an up-down determination, that question of actual uncontested custody, which is distinct from an individual who was born in the United States with a birth certificate that demonstrates that. So I think, I do think the- But counsel, that doesn't, I'm sorry, this is Judge Richardson, but don't you have to make that decision on sort of a categorical basis? So either the determination is discretionary or it's not. I don't think we get to say, well, in this case, it seems rather obvious, and so it's no longer part of the discretionary function. I mean, I'm having trouble understanding how you can draw that line. And I thought the answer to Judge Harris' question was just going to be, you know, listen, that guy ought to get fired. And there are lots of possible answers, but it's still a discretionary function. Yes, Your Honor, I would agree that the inquiry that all the courts, excuse me, virtually all the courts have looked at is this question of who to investigate, how to investigate, whether to prosecute, are these classic discretionary determinations, as you said, at sort of a high level. What I was endeavoring to draw the line was, which is what other courts have distinguished, is this question of intentional misconduct. And there are different hypotheticals of what that could be. But that's the line I was attempting. No, my hypothetical is not about intentional misconduct, just to be clear. My hypothetical is about a good-faith legal error. Okay. So, Your Honor, I guess then the line the case law draws is between intentional misconduct and negligence. And the statute is clear. The discretionary function exception, if that discretion is abused, it is still encompassed in this exception to the waiver of sovereign immunity, which I think addresses Judge Richardson's question, which is that how are we supposed to draw these lines? Well, the statute draws the line that the discretion can be abused, and nevertheless the conduct still falls within the exception. Counsel, this is Judge Wilkinson. I think a partial answer to your point, and I think it's difficult to – I don't want to get into a difficult line-drawing process and say, well, it all depends, because I'm concerned that we would be gutting the discretionary function exception the same way you would with absolute prosecutorial immunity if you said, well, there is this immunity and it is absolute, but on the other hand, it all depends. So with respect, I think Judge Richardson raised a good point that it's either there or it's not. And you say, well, is this too harsh a position? And I think you get back to the old Bivens question, which is, are there alternative remedies to safeguard against the kind of very unfortunate situation that my friend and colleague Judge Harris posits? And here you do have an alternative remedy if the discretion is abused or if a legal mistake is made. And the alternative remedy, the remedy is not a suit under the Federal Tort Claims Act. The remedy lies in the very elaborate administrative removal process that we have to guard against these kinds of mistakes. And it will go before an IJ, and then it will go before the BIA, and then it will go before the courts. And it's a pretty elaborate process, and it operates as a corrective when an immigration officer makes a bad judgment as to whether investigation and arrest are justified. And you can certainly, and obviously, one of the first things you would say before an IJ, and it probably wouldn't even get before an IJ because it would be cleared up before that hearing. But the whole thing has to work in some sort of harmony, and what you have is you have the discretionary function exception to protect against allegedly wrongful arrests and detention. And then to protect the individual officer from liability. But along with that protection of the individual officer from liability, which could chew up the immigration enforcement system, you have this administrative and judicial process to backstop grievous errors. So fortunately, I don't think we have any intentional harm, but I do think you can worry about diluting the immunity if we hold that it is something less than categorical. And do you understand what I'm saying? If you get into a situation, well, it applies here, it doesn't apply here, and the rest. Your Honor, and I would completely agree that the purpose of the administrative, the safeguard, and we've laid this out in our brief, the safeguard for... That's the backstop, not a torch suit. Right, that's right, Your Honor. And that's certainly what happened here. Plaintiff was counseled during the immigration proceeding, and according to the documents that were in the record before the district court, based on plaintiff's admission, and he didn't seek any relief from removal, he was ordered removed, he didn't appeal that. Those are elaborate processes that are in place to give individuals a path to challenge or dispute any determination by the government that they disagree with, with regard to their immigration status. Counsel, counsel. Sorry, Judge Harris, you go ahead. I just want to give you the chance to respond to an argument that's not really developed too much, but we decided a case sort of in the midst of briefing called Sanders v. United States, in which a FBI employee was charged with investigating, in some respect, with respect to the NCIC records for buying guns. And the court there recognized, I think as we have here, that there's no, you don't generally have a mandate in an investigation, but Sanders went on to find a mandate in the operating procedures there requiring follow-up under certain circumstances. And I just wanted your take on how you, why you think that case doesn't apply here, and I guess there are a couple of different avenues that you could go, but instead of positing an answer, I'll let you give an answer. Why is this case not like Sanders? Yes, Your Honor, for a few reasons. First, based on this court's case law, the question is not if there is necessarily one particular mandate somewhere in the universe of law, but rather the inquiry is whether you look at the statutory scheme, you look at the conduct as a whole to determine whether it's discretionary, whether it involves an element of judgment or choice. And cases are numerous that have held that this is quintessential discretionary activity, specifically looking into immigration status, determining a person's... Right, but that's not fundamentally different from what they were looking into in Sanders, right? This is an agent trying to determine the underlying nature of an arrest, right? I mean, that strikes me at a structure point. I understand your structure argument, but I don't understand how the investigation in Sanders is fundamentally different than the investigation here. And Sanders says even though it's discretionary as a general matter, this one operating procedure requiring follow-up under these circumstances was sufficient to overcome the discretionary function exception. Yes, Your Honor. So I'm not aware of a parallel operating procedure that was pertinent in the 2004 investigation. So that's one answer to your question. All right, so if that's the... Oh, give me the second answer, and then I will come back to the first one for just a second. Okay, and then the other answer is I just would point to other statutory and regulatory authority. Judge Wilkinson noted 8 U.S.C. 1357, 8 CFR 287, 8 C2 Romanet I that do give the discretion in looking into this exact situation. All right, but so why don't I think that 4001 is an operating procedure? That is, like, don't arrest citizens. So that's not an operating procedure. In fact, in this case, because of the facts which are taken as true in the complaint, which is that the plaintiff did concede that he was foreign-born and then proceeded to not carry his burden to demonstrate citizenship. That's a well-established area of law that I think would easily distinguish Sanders because this is not a situation where the citizenship was, in some sense, predetermined. The case law says that an individual of foreign birth has the burden of coming forward with evidence of citizenship. Judge Harris, sorry. Thank you. Do you have anything further, counsel? Yeah, I'm happy to continue. I just wasn't sure if Judge Harris had any other questions. No, thank you. I'm fine. Okay, I'm sorry. So quickly, I just wanted you to know that in the alternative, the court could affirm the district court's dismissal on alternative grounds, which we've laid out in our brief, and we would say that the district court properly concluded that the FTCA precludes appellant's case here. There is no waiver of sovereign immunity. We ask that you affirm the ruling of the district court. All right. Thank you. Counsel, you have some rebuttal time. Thank you, Your Honor. So one quick factual point. Our complaint never stated that he conceded alienage, and the government hasn't provided direct evidence of what he did concede, just secondhand evidence. And one legal point. In response to Judge Harris's question about intentional wrongdoing, I know that the district court decision here mentions that the exception might not apply to intentional wrongdoing by law enforcement. But if that's the case, then that would limit the torts to malicious prosecution. And that's contrary to another subsection of the same statute, which is 28 U.S. Code 2680H. It says the law enforcement and investigative officers may be liable for assault, battery, false imprisonment, false arrest, and abuse of process, not just malicious prosecution. So this is a point that's made in Caban, that Second Circuit decision that I mentioned. And so I know that these are separate subsections, but you cannot view them as accomplishing completely contrary things. And so if you overexpand the discretionary function exception, as the district court did, then you butt up against this other subsection, H. And unless there are any questions, I think I'll leave it at that. Judge Harris, do you have any further questions? No, thank you. Judge Richardson? No, thank you. All right, thank you very much, Mr. Stevens. We appreciate it. And we will go into that second case as promptly as you can. Thank you. The court will take a brief break before hearing the next case.
judges: J. Harvie Wilkinson III, Pamela A. Harris, Julius N. Richardson